BEFORE THE FIRST DIVISION, SEPTEMBER 14, 1944

**No. 49711.**—Protest 73278–K of Jacob H. Brodsky & Son, Inc. (Philadelphia).

COLE, Judge: A shipment of wool on skins was imported at the port of New York. The merchandise was entered conditionally free of duty under paragraph 1101 (b), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. § 1001, par. 1101 (b)), as wool on the skin intended for use in the manufacture of carpets. Said amended paragraph 1101 (b) provides that—

Any of the foregoing [including wool on skins] may be entered or withdrawn from warehouse without the payment of duty by a manufacturer, processor, or dealer upon the filing of a bond to insure that any wool or hair entered or withdrawn thereunder shall be used only in the manufacture of press cloth, camel's hair belting, knit or felt boots, heavy fulled lumbermen's socks, rugs, carpets, or any other floor coverings. A manufacturer, processor, or dealer may be relieved of liability under his bond with respect to any wool or hair so entered or withdrawn which is transferred in its imported or any other form to another manufacturer, processor, or dealer who has filed a bond to insure that the merchandise so transferred shall be used only in the manufacture of the above-enumerated articles. If any wool or hair so entered, withdrawn or transferred under bond is used or transferred for use in its imported or any other form in any manner otherwise than in the manufacture of the articles enumerated above, there shall be levied, collected, and paid on the merchandise so used or transferred in violation of the bond the regular duties which would apply to such merchandise if imported in its condition at the time of such use or transfer. Such duties shall be paid by the manufacturer, processor, or dealer whose bond is charged with the wool or hair at the time of such use or transfer; * * *. Every manufacturer, processor, or dealer who has given a bond pursuant to the provisions of this subparagraph shall report any use or transfer of merchandise in violation of the terms of his bond, within 30 days after such use of transfer, to the collector of customs in whose district the bond is filed; * * *. The Secretary of the

Treasury is authorized to prescribe such regulations and the form, conditions, and amounts of such bonds as may be necessary to carry into effect the provisions of this subparagraph.

The appraiser at the port of entry estimated the total weight of the skins with the wool as well as the clean content of the wool reporting the former to be 13,946 pounds and the latter as 8,368 pounds. The collector accepted the entry as tendered and officially returned the importation as free of duty. It is important to observe that the action of the collector is not a liquidation but an acceptance under the terms of the bond filed on entry.

Later, the importer, Iceland Cooperative Society, acting through its New York agents, shipped the merchandise under customs custody, for the purpose of having the wool pulled from the skins, to the plaintiff corporation in Philadelphia. The secretary of said corporation duly signed the accompanying official papers, indicating receipt of 8,368 pounds of clean content wool for pulling purposes. After subjecting the shipment to "the regular process of wool pulling," plaintiff accounted for 7,624 pounds of wool in grease, from which the appraiser at Philadelphia calculated a clean content of 5,724 pounds. Ultimately, and at the request of importer, the plaintiff delivered the pulled wool, in the amount reported, to E. S. Parkhurst & Co., Inc., of Philadelphia.

Customs regulations (now C. R. 1943, part 10, sections 10.91 to 10.97 inclusive), governing such procedure, were complied with throughout.

The above facts are embodied in a written stipulation offered after the case was submitted, but ordered filed, in accordance with the terms of the agreement, "as of a time prior to the submission of the above-entitled case."

The instant protest arises from a demand made of plaintiff by the collector of customs at Philadelphia, in the following letter (plaintiff's exhibit 5), under date of April 11, 1941:

Reference is made to New York transfer certificate No. 18772 covering 1,494 bundles of carpet wool on the skin, weighing 13,946 pounds at 60% yield or 8,368 pounds clean content, which wool was transferred to you by Rietmann-Pilcer Co., New York, as provided for in article 509 of the Customs Regulations of 1937, as amended in T. D. 49658, and supported by a single entry bond, customs Form 7547, in the penal sum of $8,800.

From evidence furnished by you it appears that out of the 8,368 pounds of clean wool for which you accepted responsibility only 7,782 pounds of grease wool were transferred by you to E. S. Parkhurst & Co., Inc.

Samples of the wool so transferred, furnished by you, were submitted to the appraiser at Philadelphia for report of clean content * * *.

In view of the fact that there is a discrepancy between the quantity transferred to you by Rietmann-Pilcer Co., and the quantity retransferred by you to E. S. Parkhurst & Co., demand is hereby made for the sum of $581.68 representing duty at 22¢ per pound on the quantity of wool unaccounted for by you.

Defendant has conceded that the amount of wool in grease accounted for and delivered by plaintiff and the quantity of clean content reported by the appraiser in Philadelphia are in fact the amounts of such wool actually imported. While this admission virtually renders the collector's demand untenable, counsel for the Government has raised a jurisdictional question, contending that the protest is invalid and should therefore be dismissed. Counsel's motion, made at the trial, was presented as follows:

The Government at this time wishes to move that the protest be dismissed on account of jurisdictional grounds, one of which is that the protest was not filed within 60 days after liquidation, in the instant case. There was a demand made in Philadelphia for payment of an additional sum of money. On April 10, 1941, the collector at Philadelphia made a demand for the payment in the sum of $581.68 and the protest herein was filed on June 9, 1941, against that demand and not against the liquidation of the merchandise at bar.

Section 514, Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1514), authorizing protests, provides:

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers) *all decisions of the collector,* including the legality of all orders and findings entering into the same, *as to the rate and amount of duties chargeable, and as to all exactions of whatever character* (within the jurisdiction of the Secretary of the Treasury), * * * shall *upon the expiration of sixty days after the date of such liquidation,* reliquidation, *decision,* or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidatation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. * * *. [Italics ours.]

It appears from the official papers (collective exhibit 10) that the entry in question was liquidated on June 24, 1940. Under the proposition advanced in defendant's motion, the time for filing valid protest expired 60 days after that date, section 514, *supra.*

*Hiram Walker & Sons, Inc.* v. *United States,* 25 C. C. P. A. 189, T. D. 49293 (affirmed on rehearing in *same* v. *same,* 26 C. C. P. A. 121, C. A. D. 4) supports this contention. In that case, duty was assessed on a quantity of whisky reported by the Government gauger at the time of importation, the amount being 105.16 gallons more than that remaining in the barrels when the liquor was regauged. Protest, claiming that the said difference of 105.16 gallons was lost, due to evaporation, and therefore should not be subject to duty, was filed within 60 days after payment of the duty demanded, but not within the statutory time after liquidation. The court dismissed the protest as untimely, holding that a demand for payment "is not an exaction or other decision which entitled the party withdrawing the goods to file a protest under any provision of the tariff act after the expiration of sixty days from the only liquidation made by the collector," and that "appellant was authorized only to protest within sixty days from the time of the collector's liquidation, * * *."

The same statutory construction has application here. The protest is therefore dismissed and judgment will be rendered accordingly.

In the *Hiram Walker,* case (T. D. 49293) *supra,* the court answered the contention, which is also made in the present protest, that the imposition of the duty demanded by the collector results in an assessment on merchandise not actually imported, by saying that "the Government in giving its consent to be sued prescribes the terms and conditions upon which the suit shall be brought. The statute relating to protests fixes a definite time limit within which the action may be brought. It has made no provision that fits the alleged wrong which appellant claims to have suffered." Here, the meritorious claim of plaintiff—conceded by defendant but defeated only under a severe technicality—should be amicably adjusted in some appropriate manner. The remedy, however, does not lie with this court.